**SO ORDERED.**

**SIGNED this 14th day of March, 2024.**



_____
Mitchell L. Herren
United States Bankruptcy Judge
_____

DESIGNATED FOR ONLINE PUBLICATION ONLY

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | |
| ANDOVER SENIOR CARE, LLC, | Case No. 22-10139 |
| Debtor. | Chapter 11 |
| ANDOVER SENIOR CARE, LLC, | |
| Plaintiff, | |
| vs. | |
| CALLED TO CARE INVESTMENTS KANSAS LLC | Adv. No. 22-5028 |
| Defendant. | |

### MEMORANDUM AND ORDER DENYING
### MOTION TO REOPEN ADVERSARY PROCEEDING
### AND MOTION TO SET ASIDE DEFAULT JUDGMENT

1

Under Kansas law, a Kansas limited liability company (LLC) is required to "have and maintain" a registered office and resident agent "in this state."[1]  A Kansas LLC that disregards these statutory requirements does so at its own peril. In this adversary proceeding, plaintiff obtained a $785,000 default judgment against defendant for its breach of a contract to purchase a health care residential facility pursuant to a § 363(f)[2] sale in plaintiff's chapter 11 reorganization. Defendant moved to reopen the adversary proceeding and to set aside the default judgment. Because the Court had subject matter jurisdiction, and because personal jurisdiction and service of process complied with Kansas law and satisfied the Due Process Clause, the default judgment was not void and should not be set aside under Fed. R. Civ. P. 60(b)(4). Where defendant ignored its duty to maintain and staff its registered office and process the summons and complaint delivered to that office, its alleged lack of awareness of the lawsuit was not excusable neglect that warrants relief from the default judgment under Fed. R. Civ. P. 60(b)(1).  As explained below, defendant's motions to set aside the entry of default and default judgment and to reopen the adversary proceeding for cause are denied.[3]

I.    Factual Background

The facts as recited in this memorandum and order are taken from the affidavits and evidence proffers of the parties, applicable matters of record from this

---

[1] KAN. STAT. ANN. §§ 17-7924, 17-7925 (2022 Supp.).
[2] Citations are to title 11, the "Bankruptcy Code", unless otherwise noted.
[3] Defendant Called to Care Investments Kansas LLC appears by its attorneys Ted Knopp and Brian Coon.  Plaintiff Andover Senior Care LLC appears by its attorneys Mark J. Lazzo and Justin Balbierz.

2

Court's docket report, and the default judgment hearing held on June 13, 2023. Because an evidentiary hearing on defendant's motions was not held, the facts presented and evidence proffered by defendant are presumed, only for purposes of the pending motions to reopen and set aside default judgment, to be true. The facts presented by plaintiff are also presumed true unless contradicted by defendant, in which case defendant's facts are presumed true for purposes of the pending motions.

A. <u>The Bankruptcy and Section 363(f) Sale</u>

On March 11, 2022 plaintiff Andover Senior Care, LLC filed for bankruptcy relief under Chapter 11. Its Third Amended Plan of Reorganization was confirmed as modified on August 3, 2023.[4] The final decree and entry of discharge was entered October 5, 2023,[5] and the bankruptcy case was closed.

Prior to its chapter 11 reorganization, plaintiff owned and operated two residential health care facilities, a skilled nursing facility (SNF) and an assisted living facility. Plaintiff claimed that Covid mandates, skilled nursing staff shortages, and unprofitability forced it to close the SNF shortly before filing bankruptcy. During the bankruptcy case, the plaintiff sought and obtained court approval to sell the SNF free and clear of liens or interests pursuant to § 363(f).[6] The Department of Housing and Urban Development ("HUD") held the first lien

---

[4] Case No. 22-10139, Doc. 322. Unless otherwise indicated, citations to the record are to the adversary proceeding, Adv. No. 22-2058.

[5] Case No. 22-10139, Doc. 331.

[6] On September 15, 2022, the plaintiff filed a Notice of Intended Auction and Motion for Authority to Sell the SNF free and clear of liens under § 363(f). *Id.* at Doc. 207. An Order was entered October 12, 2022 authorizing the auction and § 363(f) sale. *Id.* at Doc. 226.

3

against the SNF and under the plaintiff's chapter 11 plan the SNF sale proceeds would be applied to HUD's claim, reducing the amount of indebtedness.

The first-attempted sale of the SNF was by online auction in the fall of 2022.[7] Defendant, Called to Care Investments Kansas, LLC submitted the high bid and entered into a contract for the purchase of the SNF in December of 2022.[8] On November 30, 2022, Osaginwen Ayiyi electronically signed the Bid Acknowledgment and the Contract for Sale and Purchase on behalf of defendant as its "managing member."[9] The total purchase price was $3,063,500[10] and closing was set for January 16, 2023. Under the contract, defendant was required to deposit $200,000 as non-refundable earnest money concurrently with execution of the contract.[11] The defendant failed to do so and otherwise failed to close its purchase.

Plaintiff's second-attempted sale of the SNF was to WC Capital, LLC for a total purchase price of $2,200,000 in January 2023.[12] It too, fell through.

Pursuant to the third-attempted sale in March of 2023, plaintiff ultimately sold the SNF to NAT Capitol, LLC for a purchase price of $1,925,000 and the bankruptcy court approved the sale on April 17, 2023.[13]

B. Called to Care Investments Kansas, LLC

---

[7] Case No. 22-10139, Doc. 226.
[8] Doc. 1-1.
[9] *Id.* at 1, 7.
[10] *Id.* at 2, ¶¶ 2-3. The total purchase price was comprised of the defendant's bid in the amount of $2,785,000 plus a 10% buyer's premium in the amount of $278,500. *Id.* at 1.
[11] *Id.* at 2, ¶ 2.
[12] Case No. 22-10139, Doc. 268. This buyer executed a similar Bid Acknowledgement and Contract as defendant. The bid amount was $2,000,000 and the buyer's premium was $200,000. An Order authorizing Sale #2 was entered March 8, 2023. *Id.* at Doc. 277.
[13] Case No. 22-10139, Docs. 283 and 296.

4

Called to Care Investments Kansas, LLC was organized on November 7, 2022, as a Kansas LLC when it filed its Limited Liability Company Articles of Organization with the Kansas Secretary of State's office, a few weeks before it executed the contract to purchase the SNF and just over a month before plaintiff filed the adversary complaint on December 15, 2022.[14] The Articles of Organization lists Osaginwen K. Ayiyi as the organizer and resident agent of the company and states its registered office in Kansas as 1529 N. 63rd Ter., Kansas City, Kansas 66102.[15]

In his Declaration executed November 7, 2023 and attached to the motion to set aside default judgment, Ayiyi states that he is the sole officer, manager, and agent of defendant.[16] Defendant also asserts in its motion that "[t]he house listed as the Registered Office in Kansas was never occupied nor serving as an office during the time of service. There was no "person in charge" or even present."[17] By defendant's own admission, it failed to comply with Kansas law by not staffing the registered office after it was designated as such and Ayiyi was designated as its resident agent in November of 2022.[18]

The Articles of Organization also lists the mailing address for "official mail" as: Osaginwen K. Ayiyi, 16642 W. Durango Street, Goodyear, AZ 85338. This

---

[14] Doc. 35, p. 11.
[15] *Id.*
[16] *Id.* at 10.
[17] *Id.* at 2.
[18] *See* KAN. STAT. ANN. § 17-7925(b), requiring an individual resident agent in this state to "be generally present" at the registered office "at sufficiently frequent times" to accept service of process and other communications directed to the LLC for which it serves, and to forward service and communications to the LLC.

5

address is not designated as the address to receive service of process on behalf of defendant.

C. <u>The Adversary Proceeding for Breach of Contract</u>

Prior to filing its adversary complaint against defendant, both plaintiff's counsel and the auctioneer made demand via e-mail on defendant through resident agent Ayiyi for payment of the required earnest money deposit and threatened litigation if the deposit was not received. Ayiyi did not respond to either e-mail communication.[19] Plaintiff filed its adversary complaint against defendant for breach of the § 363(f) sale contract on December 15, 2022, attaching a copy of defendant's bid acknowledgment and contract. Plaintiff sought to recover as damages the difference between defendant's purchase price and the purchase price plaintiff ultimately receives from the subsequent sale of the SNF.

Plaintiff requested issuance of summons and the Clerk of the Bankruptcy Court issued it on December 16, 2022.[20] Plaintiff executed the summons and sent it and a copy of the complaint on December 19 by certified mail, return receipt requested, addressed to "Called to Care Investments Kansas, LLC, c/o Osaginwen K. Ayiyi, Resident Agent" at the defendant's registered office address listed in its Articles of Organization.

The executed summons with a copy of the complaint was filed on December 21,[21] and on January 4, 2023, plaintiff filed the "green card" (*i.e.* the certified mail

---

[19] Doc. 41, Ex. A at ¶s 5-6; Ex. A-1; Ex. A-2.
[20] Docs. 2 and 3.
[21] Doc. 4.

**6**

receipt) indicating that the summons and complaint were served December 27, 2022, and signed for by an unknown individual, with the "Agent" box on the receipt marked.[22] Plaintiff's counsel then filed an affidavit of service on January 23, 2023, averring to service on defendant.[23]

Defendant failed to serve a response or answer to the complaint, or obtain an extension of time to do so. On January 24, 2023, plaintiff obtained a Clerk's Entry of Default pursuant to Fed. R. Civ. P. 55(a), as incorporated by Fed. R. Bankr. P. 7055 and moved for default judgment against defendant.[24]

Plaintiff sought in personam judgment against defendant in the amount of $785,000. On February 1, 2023, the Court set the motion for default judgment for hearing on March 14, to determine the amount of damages pursuant to Rule 55(b)(2).[25] The Bankruptcy Noticing Center ("BNC") served the notice of hearing on February 3 by first class mail on defendant with the same address used by plaintiff for service of summons and the complaint.[26] That hearing was continued to June 13, to track with confirmation of plaintiff's third-amended plan of reorganization.[27]

On June 13, defendant failed to appear for the hearing on the motion for default judgment. At the hearing, plaintiff proffered that its damages of $785,000 were the difference between defendant's $2,785,000 bid for the purchase of the SNF and the $2,000,000 bid by the second bidder, WC Capital. The Court granted

---

[22] Doc. 5. The individual's signature is illegible and the printed name of the individual was not provided on the certified mail receipt.
[23] Doc. 6.
[24] Docs. 10 and 11.
[25] Doc. 13.
[26] Doc. 14.
[27] Docs. 23 and 26.

plaintiff's motion and entered a final judgment by default in the amount of $785,000 on June 14.[28]

In August of 2023, plaintiff registered its judgment in state court by filing a Notice of Filing of Foreign Judgment, obtained a Writ of Special Execution on real estate owned by defendant in Sedgwick County, Kansas, and filed a state court Motion for Order of Sale of the real estate under Kansas law.[29] All of those post-judgment enforcement filings were served on defendant. Defendant did not contact plaintiff or its counsel after service of those papers.[30]

Defendant did not respond to the default judgment and enforcement process until the day prior to the September 12, 2023, hearing on the state court Motion for Order of Sale, when defendant's attorney e-mailed a letter to plaintiff's counsel and filed a motion to continue the state court hearing.[31] Defendant's counsel made no claim in that communication that defendant had no notice of the plaintiff's adversary complaint.[32]

On October 9, 2023, defendant's resident agent Ayiyi appeared, along with defendant's attorney, for a state court hearing in aid of execution. Neither claimed at that hearing that defendant had not received the adversary complaint that resulted in the default judgment.[33]

---

[28] Docs. 28 and 29.
[29] Doc. 41, Ex. A (Affidavit of Mark J. Lazzo), ¶14. Notably, defendant did not refute the statements in the affidavit.
[30] *Id.* at ¶¶ 13-15.
[31] Doc. 41, Ex. A, p. 23. In that same correspondence, defendant's attorney proposed a settlement to resolve the contract dispute. *Id.* Ex. A-4.
[32] *Id.* at ¶¶ 16-17.
[33] *Id.* at ¶ 18.

8

On November 7, 2023, nearly five months after entry of the default judgment, defendant moved in this Court to set aside the clerk's entry of default for "good cause" under Fed. R. Civ. P. 55(c) and set aside the default judgment pursuant to Fed. R. Civ. P. 60(b)(1) (*i.e.* excusable neglect).[34] Defendant also contends that service of the summons and complaint did not give reasonable notice to defendant or comply with constitutional due process and therefore, the default judgment was entered without jurisdiction over the defendant and is void, implicating Fed. R. Civ. P. 60(b)(4) (*i.e.* the judgment is void). Defendant points to mailings by the BNC by first class mail to defendant at the Kansas City address in care of Ayiyi that were returned undeliverable *after* the service of the summons and complaint, including the Clerk's Entry of Default,[35] the Clerk's notice of hearing on motion for default judgment,[36] the Court's trial reminder letter,[37] and notice of Judgment.[38]

On November 9, 2023, defendant filed a motion to reopen the adversary proceeding for cause pursuant to § 350 and Fed. R. Bankr. P. 5010, seeking the Court's consideration of its motion to set aside the default judgment filed on November 7.[39] Plaintiff filed an objection in which it addressed both the motion to reopen and the motion to set aside the default judgment.[40] The motion to reopen

---

[34] Doc. 35. Civil Rule 55(c) is made applicable to adversary proceedings by Fed. R. Bankr. P. 7055. Civil Rule 60(b) is made applicable in bankruptcy by Fed. R. Bankr. P. 9024 with qualifications not relevant here.

[35] Doc. 16 (Notice of Returned Mail to Court dated February 9, 2023).

[36] Doc. 17 (Notice of Returned Mail to Court dated February 17, 2023).

[37] Doc. 21 (Returned envelope to Court indicating "not deliverable as addressed, unable to forward.") and Doc. 24 (Notice of Returned Mail to Court dated March 13, 2023).

[38] Doc. 34 (Notice of Returned Mail to Court dated June 29, 2023).

[39] Docs. 36 and 35.

[40] Doc. 41.

was set for a non-evidentiary hearing on the Court's regular monthly motions docket, where the parties presented argument on both motions. At the hearing, defense counsel represented that Ayiyi "lives and works in Arizona," and reiterated that the defendant's registered office in Kansas was never staffed for receipt of service of process.

The Court invited a proffer from defense counsel of evidence it could provide to show excusable neglect and a meritorious defense to the contract action if the Court were to convene an evidentiary hearing. Defense counsel conceded that defendant did not staff the registered office and had no proffer regarding evidence showing excusable neglect of why defendant failed to do so. With respect to a meritorious defense to breach of contract, defense counsel proffered that Ayiyi would testify that he was advised by his realtor that if he did not make the earnest money deposit, "the contract would go away" and defendant would not be responsible.

Counsel asserted the measure of damages for breach should not be the difference in price between defendant's bid and the second bid. Factually, defendant proffered it could provide evidence that the value of the property was fluctuating and that defendant could not obtain financing for the purchase because the property failed to appraise for the purchase price. Defendant did not proffer any contract provision making the sale contingent on financing.

At the conclusion of the argument the Court took the motions under advisement and advised it would issue a written ruling or continue the hearing for

evidence. Two weeks after the hearing, defendant filed a support document purporting to be a further proffer of evidence it could provide in support of its position on the insufficiency of service and meritorious defense to the underlying breach of contract claim.[41]  In that support document, defendant identified a witness from the Secretary of State's office who would testify regarding the procedure for effective service on "foreign limited liability companies." Specifically, the proffered testimony would address service of process on the Secretary of State's office as the irrevocable agent of defendant under KAN. STAT. ANN. § 60-304(f) and the steps the witness would have taken to forward the summons and complaint to the defendant in a manner to give it actual notice of the lawsuit if the Secretary of State had received the papers in its role as agent of the defendant.[42] The supplemental proffer also asserts in a conclusory fashion that defendant has a meritorious defense under the contract, "including the materiality of any alleged breach, the fact that there was a condition precedent to completing performance under the contract, and causation."[43]

II.   <u>Analysis</u>

Defendant seeks to reopen the adversary proceeding for cause, contending the Court should set aside the entry of default and the default judgment under Fed. R. Civ. P. 55(c) and 60(b)(1) for excusable neglect, and for insufficient service of process

---

[41]  Doc. 44.

[42] *Id.* at 8-9.

[43] *Id.* at 9.

11

of the summons and adversary complaint, resulting in this Court's lack of jurisdiction over defendant. Jurisdiction will be addressed first.

A. <u>Jurisdiction</u>

The cornerstone of defendant's argument to set aside the default judgment is that the Court lacked jurisdiction over defendant because it was never provided with actual notice of the lawsuit.[44] A default judgment requires that a court have jurisdiction over the defendant. This includes both subject matter jurisdiction and personal jurisdiction. It is the court's affirmative duty to inquire into its jurisdiction.[45]

1. *Subject Matter Jurisdiction*

A bankruptcy court has subject matter jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[46] Jurisdiction of this proceeding is derived from defendant's breach of contract for a § 363(f) sale free and clear of liens during this bankruptcy. It is a proceeding to enforce a § 363(f) sale. As such, it is a proceeding "arising in" a case under title 11.[47] It concerns

---

[44] *See* Doc. 35.

[45] *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1499 (10th Cir. 1994) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)); *Dennis Garberg & Associates, Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 771–72 (10th Cir. 1997).

[46] 28 U.S.C. § 1334(b) and § 157(a).

[47] *See* 1 COLLIER ON BANKRUPTCY ¶ 3.02[5] (Richard Levin & Henry J. Sommer eds., 16th ed.) (an action based upon any postpetition contract with a debtor-in-possession is core, "arises in" title 11, and does not implicate *Stern*); *Northwestern Inst. of Psychiatry, Inc. v. Travelers Indem. Co. (In re Northwestern Inst. of Psychiatry, Inc.)*, 268 B.R. 79, 86-87 (Bankr. E.D. Pa. 2001); *Denunzio v. Ivy Holdings, Inc. (In re East Orange Gen. Hosp., Inc.)*, 587 B.R. 53, 74 n.38 (D.N.J. 2018) (describing "arising in" claims as "claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case"); *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 737-38 (9th Cir. 2009), *cert. denied*, 560 U.S. 966, 130 S. Ct. 3413 (2010) (bankruptcy court had subject-matter jurisdiction over debtor's breach of contract action against chapter 7 trustee and other estate representatives where suit was based on conduct in administering the bankruptcy estate).

12

administration of the estate and affects the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship and is therefore a core proceeding.[48]

The Court has subject matter jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), D. Kan. Standing Order 13-1 pursuant to 28 U.S.C. § 157(a), and § 157(b)(2)(A), (O).[49]

### 2. *Personal Jurisdiction*

"A default judgment in a civil case is void if there is no personal jurisdiction over the defendant."[50] "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[51] The Court will review the due process considerations first, followed by the applicable statute authorizing service of process, and then will review specific

---

[48] 28 U.S.C. § 157(b)(2)(A) and (O); *see In re East Orange Gen. Hosp., Inc.,* 587 B.R. at 73-74 (bankruptcy court had jurisdiction over proceedings to enforce the § 363(f) sale order as a core proceeding).

[49] Even if the enforcement of the § 363(f) sale contract was non-core, the contract claim is a "related to" proceeding over which this Court may exercise jurisdiction, because it could conceivably have an effect on the bankruptcy estate. *See Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir. 1990) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). If the outcome could alter the debtor's liabilities, thereby impacting the handling and administration of the bankruptcy estate, it is related to the bankruptcy case. *Id. See also Redmond v. Bank of New York Mellon (In re Brooke Corp.),* Case No. 8-22786, Adv. No. 10-6245, 2012 WL 1759322, at *7 (Bankr. D. Kan. May 15, 2012). Here, the proceeds from sale of the SNF under § 363(f) were intended to be used to partially pay-down the claim of debtor's largest secured creditor under the terms of the plan of reorganization. In short, if a "related-to" proceeding, this Court's decision may be treated as proposed findings of fact and conclusions of law. *See* D. Kan. Rule 83.8.5.

[50] *Niemi v. Lasshofer*, 770 F.3d 1331, 1347 (10th Cir. 2014) (quoting *Hukill v. Okla. Native Am. Domestic Violence Coal.,* 542 F.3d 794, 797 (10th Cir. 2008) (quotations and alteration omitted)).

[51] *Id.* at 1348 (quoting *Trujillo v. Williams,* 465 F.3d 1210, 1217 (10th Cir. 2006) (quotation omitted)).

13

arguments of defendant that due process was lacking due to its alleged lack of actual notice of the lawsuit.

### 3. *Due Process – General and Specific Jurisdiction*

To evaluate whether the exercise of personal jurisdiction over a defendant comports with due process this Court must first assess whether "the defendant has such minimum contacts with the forum state that [it] should reasonably anticipate being haled into court there. This minimum-contacts standard may be satisfied by showing general or specific jurisdiction."[52] If minimum contacts exist, the next step is to determine if the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice.[53]

The Due Process Clause permits the exercise of personal jurisdiction over a Kansas-domiciled corporation under "general jurisdiction," which permits all kinds of suits against an entity in the state where the entity is incorporated or has its principal place of business.[54] Here, defendant was incorporated as a Kansas LLC by its organizer Osaginwen K. Ayiyi's filing of the Articles of Organization with the Kansas Secretary of State shortly before it participated in the online auction. Those

---

[52] *Niemi*, 770 F.3d at 1348 (quoting *Emps Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1159–60 (10th Cir. 2010) (quotations omitted)).

[53] *Emps. Mut. Cas. Co.,* 618 F.3d at 1160 (quoting *OMI Holdings Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[54] *See Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) (recognizing that a corporation is subject to general jurisdiction in its place of incorporation and principal place of business); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("[T]he paradigm forum for the exercise of general jurisdiction…for a corporation…[is] one in which the corporation is fairly regarded as at home.") (citing Lea Brilmayer, et al., *A General Look at General Jurisdiction*, 66 TEX. L. REV. 721, 728 (1988) (identifying domicile, place of incorporation, and principal place of business as "paradig[m]" bases for the exercise of general jurisdiction)). This Court holds that this also applies to an LLC. *See Avus Designs, Inc. v. Grexxx, LLC,* 644 F. Supp. 3d 963, 978 (D. Wyo. 2022) (citing *Daimler*, 571 U.S. at 139)).

14

Articles designated defendant's "registered office" in Kansas and named Ayiyi as "the resident agent at the registered office." Defendant is therefore amenable to general jurisdiction in Kansas and this Court could exercise personal jurisdiction of defendant consistent with traditional notions of fair play and substantial justice.

Even if defendant had not subjected itself to general, all-purpose jurisdiction in Kansas, it had sufficient contacts to satisfy the requirements of specific jurisdiction. This requirement that a suit arise out of or relate to a defendant's contacts with the state forum is sometimes couched in terms of a "purposeful availment" requirement, ensuring "that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person' . . .[and that] the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State."[55]

Defendant not only formed itself as a Kansas LLC, but it also entered into a Bid Acknowledgement and Contract for Sale to purchase a nursing home located in Kansas from another Kansas-domiciled LLC. These actions were hardly random, fortuitous, or attenuated contacts with the state of Kansas. Subjecting defendant to jurisdiction in Kansas does not offend traditional notions of fair play and substantial justice.

4. *Authorization of Service on Defendant*

---

[55] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

15

As a Kansas LLC, defendant is a "covered entity" under the Business Entity Standard Treatment Act, KAN. STAT. ANN. § 17-7901 *et seq.* (2022 Supp.).[56] The Act requires LLCs to file Articles of Organization with the Kansas Secretary of State.[57] The Act provides that the execution of any document required to be filed under Chapter 17 of the Kansas statutes and by the Act, with the secretary of state, "shall constitute an oath or affirmation, under the penalties of perjury, that the facts stated in the document are true."[58] Section 17-7915 states that "[s]ervice of process in any action against a covered entity . . . shall be made in the manner described in K.S.A. 60-304, and amendments thereto."[59]

Under § 17-7924(a) of the Act, every covered entity is required to have and maintain in this state a registered office.[60] Under § 17-7925(a) every covered entity is required to have and maintain in this state a resident agent, which may include an individual resident in this state.[61] An individual resident agent must be present at a designated location in this state (*i.e.* the registered office) at sufficiently frequent times to accept service of process and perform the functions of a resident agent. The resident agent is required to accept service of process and other communications directed to the covered entity and forward the same to the covered entity.[62] The Act contains provisions for changing the registered office or resident

---

[56] *See* § 17-7902(a)(4).
[57] § 17-7904(a). Subsection (a) specifies that the Articles of Organization shall comply with § 17-7673.
[58] § 17-7909(a).
[59] § 17-7915.
[60] § 17-7924(a). The use of the terms "principal office or place of business in this state" or other term of like import, is deemed to mean and refer to the covered entity's registered office required by § 17-7924(a). *See* § 17-7924(b).
[61] § 17-7925(a)(2).
[62] *Id.* at (b)(1), (3).

16

agent or appointing a successor resident agent upon resignation of the designated resident agent.[63] Defendant does not contend it changed its registered office or resident agent at any time between the filing of its Articles of Organization on November 7, 2022 and the service of the summons and complaint by certified mail on December 27, 2022.

The defendant's Articles of Organization executed by Ayiyi, complies with the requirements of § 17-7904(a) and § 17-7673(a) for forming an LLC. It provides: (1) the name of the LLC—Called to Care Investments Kansas LLC; (2) the address of the registered office required to be maintained in Kansas—1529 N. 63rd Terrace, Kansas City, Kansas 66102; and (3) the name of the resident agent in this state for service of process—Osaginwen K. Ayiyi.  Defendant was formed as an LLC on November 7, 2022, upon the filing of the Articles of Organization and designation of its registered office and resident agent in Kansas, as required by § 17-7673(a), § 17-7924, and § 17-7925.[64]

Fed. R. Bankr. P. 7004(b)(7) permits service on an LLC as prescribed by state law. Kansas law, specifically § 17-7915 of the Act, authorizes service of process on an LLC under § 60-304(e)(1) (2022 Supp.), by serving "an officer, manager, partner or a resident, managing or general agent."[65]  If service is by return receipt delivery (*i.e.* certified mail) on an agent, it must be addressed to the person at the person's

---

[63] *See* §§ 17-7926, -7927, -7928, -7929.
[64] *See* § 17-7911.
[65] The Act mandates that service of process in any action against a covered entity (*i.e.,* limited liability company) shall be made under § 60-304. *See* § 17-7915*; see also Doran Law Office v. Stonehouse Rentals, Inc.*, 678 Fed. Appx. 733, 735 (10th Cir. 2017).

17

*usual place of business.*[66]  Under the Act, the use of the terms "principal office or place of business in this state" or other term of like import, *in any statute* other than the Kansas uniform commercial code, unless the context indicates otherwise, "shall be deemed to mean and refer to the covered entity's registered office required by this section [17-7924(a)]."[67]

Here, plaintiff served the summons and complaint by certified mail (return receipt requested); it was delivered and accepted on December 27, 2022.[68] It was addressed to "Called to Care Inv. KS LLC, *c/o Osaginwen K. Ayiyi, Res. Agent*"[69] at the defendant's registered office in Kansas, as designated by Ayiyi in defendant's Articles of Organization.[70] Plaintiff complied with Kansas law for service of the summons and complaint on defendant. The signature of the agent accepting service and delivery of the summons and complaint at the 63rd Terrace address is illegible to the Court, but the agent box was checked. Contrary to defendant's argument, the delivery of the certified mailing was neither refused, nor unclaimed.

5. *Due Process – Reasonable Notice and Opportunity to be Heard*

Defendant argues strenuously that this Court's entry of the default judgment denied defendant due process because it allegedly received no *actual* notice of the adversary proceeding or the motion for default judgment. Defendant is adamant

---

[66] KAN. STAT. ANN. § 60-304(e)(1) (2022 Supp.). *See also* KAN. STAT. ANN. § 60-303(c)(1) (service by return receipt delivery may be effected by certified mail).
[67] § 17-7924(b).
[68] *See* FED. R. CIV. P. 4(l) (requiring proof of service by the server's affidavit); Doc. 6 (affidavit of service of plaintiff's counsel).
[69] *See* Doc 5 (emphasis added).
[70] *See* Doc. 41, p. 21, Ex. A-3 (Ayiyi declared under penalty of perjury that the registered office in Kansas and the name of the resident agent were true and correct).

18

that plaintiff had an independent duty to ensure that the person signing for the certified mail delivered to defendant's registered office was actually affiliated with defendant and authorized to act as its agent.[71] That argument is incorrect. Due process requires that the plaintiff give defendant reasonable notice and an opportunity to be heard, not actual notice.[72]

Service in this case is similar to the *Drummond* case decided by the Kansas District Court, which rejected the argument defendant makes here—that service signed for by anyone other than Ayiyi, the resident agent, is insufficient.[73]

> Here, it is clear that Plaintiffs complied with § 60-304(e), notably the provision concerning certified mail. On December 24, 2013, Plaintiffs sent, via Certified Mail (return receipt requested), a copy of the Complaint and Summons to Armata, specifically addressed to its registered agent Chan Tran ("Tran"), at the address listed for the corporation . . . Delivery of the Complaint and Summons was made and received *by someone at that location* on December 30, 2013. [Emphasis added].
>
> . . . Armata argues that, while delivery may have been made, it is impossible to tell from the postal receipt exactly *who* signed for the documents. The only thing that *is* clear is that the signature is not Tran's. And, as Armata's registered agent, only Tran was authorized to accept service. As such, Armata argues, service signed for by anyone else was insufficient. Armata's argument is without merit. Kansas statute § 60-304(e) simply requires that "service by return receipt delivery on an . . . agent . . . be *addressed* to the person at the person's usual place of business." There is no requirement in the statute that delivery actually be *accepted* only by that registered agent. As such, Defendant Armata's

---

[71] *See* Doc. 44, pp. 4-5.

[72] *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (finding that notice is constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent); *Dusenbery v. United States,* 534 U.S. 161, 169-70 (2002) (holding that efforts to notify defendant by certified mail at its "record address," without more, satisfy due process, and due process does not require actual notice).

[73] *Drummond v. Armata Logistics, Inc.,* No. 2:13-CV-2633, 2014 WL 2897849 (D. Kan. June 26, 2014).

19

motion to dismiss for insufficient service of process and lack of personal jurisdiction is denied.[74]

Thus, while the signature on the return receipt in this case was illegible, it was received by someone at the designated registered office, and someone represented that the signer was an agent by checking the agent box. The certified mailing did not restrict delivery to Ayiyi personally, and nothing in § 60-304(e) requires restricted delivery.

The defendant's argument that it lacked notice of the lawsuit is based on the faulty premise that the mailing was unclaimed and undelivered, thus requiring plaintiff to do more to effect service. Defendant neither offered, nor proffered, any evidence contradicting the fact that the certified mail package was accepted by someone at defendant's registered office address.[75] Defendant has not proffered any evidence that at the time of delivery of the certified mail on December 27, 2022, it was no longer a Kansas LLC, or that its registered office and resident agent had changed.

Because service was properly effected and the certified mailing was never returned or unclaimed, defendant's supplemental proffer of testimony from an employee of the Secretary of State's office, that if it had received the summons it would have mailed it to defendant's Arizona address, is not relevant. Service on the Secretary of State as defendant's irrevocable agent under § 60-304(f) is triggered when an LLC fails to appoint or maintain in this state a resident agent on whom

---

[74] *Id.* at *2-3 (emphasis added).
[75] Docs. 5 and 6.

service may be had; or its resident agent cannot with reasonable diligence be found at the registered office in this state.[76]

In an attempt to invoke this statutory provision specifying service on the Secretary of State, defendant's sole agent, Ayiyi, now denies that he was a resident of Kansas and admits to living and working in Arizona. Despite designating the registered office in Kansas City, defendant's motion states that "[t]he house listed as the Registered Office in Kansas was never occupied nor serving as an office during the time of service. There was no 'person in charge' or even present."[77]

Ayiyi thus alleges that defendant never staffed the registered office at all. Interestingly, defendant does not offer any evidence that the house was completely vacant or unoccupied by others unaffiliated with defendant. Nor does defendant proffer evidence that it informed plaintiff or the Kansas Secretary of State's office that defendant's registered office was not staffed by its resident agent or anyone else affiliated with defendant. Defendant's registered agent was required to be present at the designated location in this state at sufficiently frequent times to accept service of process on behalf of defendant, forward the summons and complaint to defendant, and otherwise perform the functions of a resident agent.[78]

Plaintiff complied with the statute for service on an LLC, by serving defendant at the registered office under Kansas law, § 60-304(e)(1). Plaintiff was not required to effect service under other, alternative methods under Fed. R. Bankr.

---

[76] *See* KAN. STAT. ANN. § 60-304(f) (2022 Supp.).
[77] Doc. 35, p. 2.
[78] § 17-7925(b).

21

P. 7004 or Fed. R. Civ. P. 4. And because service was reasonably calculated to reach the intended recipient when sent,[79] and was also accepted, plaintiff was not on notice of any alleged absence of the defendant's registered agent and had no legal obligation to serve the Kansas Secretary of State.

Defendant's claimed failure to staff its registered office supplies no lack of due process defense under the circumstances here. Defendant's heavy reliance on *Jones v. Flowers,* a tax case, for its lack of constitutional due process claim is misplaced.[80] That Supreme Court case pertained to the state of Arkansas' attempted notice of a tax sale of the petitioner's property for unpaid taxes. The issue before the Court was whether a notice of tax sale sent twice to the petitioner's last known address by certified mail, *but went unclaimed both times*, satisfied due process.

The Supreme Court noted the constitutionality of a particular notice procedure is assessed *ex ante,* (*i.e.*, from the viewpoint of the plaintiff at the time the notice is sent) not *post hoc.*[81] But if the state acquires information that the attempted notice was ineffective, what it does with that information must be considered. In *Jones,* because the government's twice-attempted notice by certified mail was returned and unclaimed, the government had to take additional reasonable steps, if practicable, to provide notice before taking the petitioner's property, such as posting the notice of tax sale at the property address, or

---

[79] *See supra,* note 72.
[80] *Jones v. Flowers,* 547 U.S. 220 (2006).
[81] *Id.* at 221. *See also Dusenbery,* 534 U.S. at 171-72 (refusing to evaluate the reasonableness of a particular method of notice by comparing it to alternative methods that are identified after the fact).

22

personally serving the homeowner as required by the state's tax sale statute when certified mail is returned and unclaimed.

Because the service of the summons and complaint by certified mail addressed to defendant's resident agent in this adversary was never refused, returned, or unclaimed, plaintiff "heard nothing back indicating that anything had gone awry" with service or notice.[82] The Supreme Court recognized in *Jones* that in those instances "[t]he reasonableness and hence the constitutional validity of [the] chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected."[83] Not until defendant challenged the sufficiency of service of process in the motion to set aside the default judgment, filed nearly a year after service was effected and long after default judgment was entered, was plaintiff made aware that defendant claimed it had no notice of the lawsuit or default judgment. In sum, the Supreme Court's *Jones* tax decision is distinguishable from this case and does not support defendant's constitutional due process argument.

Defendant also complains it did not receive notice of the motion for default judgment. This argument is also unpersuasive. Under the Federal Rules of Civil Procedure, service of a motion for default judgment is not required on a party that has failed to appear in the case after proper service.[84] Service of such a motion is only required on a party who has appeared personally or by a representative.[85]

---

[82] *See Id.*

[83] *Id.* (first quoting *Mullane,* 339 U.S. at 315; and then citing *Dusenbery,* 534 U.S. at 170).

[84] *See* FED. R. CIV. P. 5(a)(2), as made applicable to adversary proceedings by FED. R. BANKR. P. 7005.

[85] *See* Rule 55(b) requiring written notice of the application for default judgment at least 7 days before the hearing.

23

Notwithstanding these procedural rules, the BNC gave notice of the hearing to be held on the motion for default judgment on February 3, 2023, by first class mail sent to defendant in care of its resident agent at defendant's registered office.[86] Likewise, the bankruptcy court gave written notice of the hearing by first class mail on February 28, 2023 by sending a trial reminder letter to defendant.[87] That those subsequent mailings were returned undeliverable after service of the summons and complaint has no bearing on the sufficiency of the earlier service of process.

The Court concludes that plaintiff's service of process by certified mail on defendant, addressed to its resident agent at the registered office, complied with § 60-304(e)(1) and satisfies the Due Process Clause.[88] Therefore, this Court could exercise personal jurisdiction over defendant and the default judgment is not void, eliminating Rule 60(b)(4) as a basis to set aside the default judgment. The Court now turns to the merits of defendant's motion to set aside the default and default judgment.

B. Legal Standards for Relief under Rule 55(c) and Rule 60(b)(1)

In seeking to set aside the clerk's entry of default and the default judgment in this adversary proceeding, defendant cites Fed. R. Civ. P. 55(c) (relief from entry of default for "good cause"),[89] and Fed. R. Civ. P. 60(b)(1) (relief from default judgment

---

[86] Doc. 14.
[87] Docs. 18 and 19.
[88] As noted in *Drummond,* the plaintiff has the burden of proving by a preponderance of the evidence that jurisdiction over defendant exists, but it is entitled to the benefit of any factual doubt. 2014 WL 2897849, at *2.
[89] Rule 55 is made applicable in adversary proceedings by FED. R. BANKR. P. 7055.

24

on ground of excusable neglect).[90] Before addressing those two rules, a brief description of the Rule 55 hearing that was held before default judgment was entered is appropriate.

### 1. *Entry of Default Judgment*

The Court set a hearing on the plaintiff's motion for default judgment under Rule 55(b)(2) for a determination of the amount of damages, a hearing for which defendant did not appear. At a default judgment hearing, the plaintiff must establish the amount of damages. The Court has broad discretion to enter default judgment.[91] "The well-pleaded factual allegations of the plaintiff's complaint are taken as true, except those allegations relating to the amount of damages."[92] Defendant has no further standing to contest the factual allegations of plaintiff's cause of action once default is established.[93]

At the June 13, 2023 default judgment hearing, plaintiff's counsel made a proffer of the amount of its claimed damages $785,000—defendant's winning bid of $2,785,000 for the purchase of the SNF property less the subsequent, lower bid of $2,000,000 by the second purchaser.[94] The second-attempted sale of the SNF had also fallen through and the third-attempted sale in the amount of $1,925,000 to

---

[90] Rule 60(b) is incorporated in bankruptcy by FED. R. BANKR. P. 9024, with some modifications of the time limits not relevant here.

[91] *Olcott v. Delaware Flood Co.,* 327 F.3d 1115, 1124 (10th Cir. 2003).

[92] *Mathiason v. Aquinas Home Health Care, Inc.,* 187 F. Supp. 3d 1269, 1274 (D. Kan. 2016) (quoting *DeMarsh v. Tornado Innovations, L.P.,* No. 08-2588, 2009 WL 3720180, at *2 (D. Kan. Nov. 4, 2009)

[93] *Id. See also Olcott,* 327 F.3d at 1124 n.11 (noting that district court properly refused to consider evidence introduced by defendants to defend the contract claims on the merits after entry of default).

[94] Plaintiff proffered the amount of the deficiency occasioned by defendant's breach. Plaintiff did not seek the full purchase price from defendant; it mitigated its damages by obtaining a subsequent sale of the property, albeit at a substantially lower price.

25

NAT Capital, LLC had since been approved by the Court and had closed while the motion for default judgment was pending. Despite incurring greater alleged damages due to the even lower price in the third sale, plaintiff declined to amend its motion and pursue the greater damages. The Court granted default judgment in favor of plaintiff in the amount of $785,000.

> 2. *Relief from default judgment for excusable neglect under Rule 60(b)(1)*

When default judgment has been entered and the vacating of that judgment is sought, courts overwhelmingly focus on a Rule 60(b)(1) analysis since the judgment has, in essence, swallowed the clerk's entry of default under Rule 55(c).[95] This Court agrees with that focus.

As the movant and defaulting party, defendant has the burden to establish that the default judgment entered against it should be set aside under grounds for relief enumerated in Rule 60(b).[96] Relief under Rule 60(b) is only granted in exceptional circumstances.[97] Where the defendant seeks to set aside a default judgment for excusable neglect under Rule 60(b)(1), it must show that it neglected to timely answer the complaint and that the neglect was excusable.[98]

---

[95] *See Dennis Garber*, 115 F.3d at 775 n.6 ("[I]t is well established that the good cause required by FED. R. CIV. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect [standard]. . . under FED. R. CIV. P. 60(b)."); *see also Midwest Cmty. Bank v. SKC Ins. Services, LLC,* No. 09-2379, 2010 WL 11565147, at *2 (D. Kan. Feb. 10, 2010) (Because there has been a default judgment in this case, the court does not evaluate defendants' arguments under the good cause standard, but looks to Rule 60(b)."); *Doran Law Office v. Stonehouse Rentals, Inc.,* No. 14-2046, 2015 WL 6871330, at *8 (D. Kan. Nov. 9, 2015).

[96] *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990).

[97] *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co., Inc.,* 909 F.2d 1437, 1440 (10th Cir. 1990).

[98] *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 394 (1993); *Miller v. Henning (In re Lake),* 654 B.R. 916, 920-21 (Bankr. E.D. Mich. 2023) (Rule 60(b)(1) motion for relief

26

In default judgment cases, the movant must also demonstrate the existence of a meritorious defense.[99] Satisfaction of the excusable neglect standard is a prerequisite to considering whether there is a meritorious defense.[100]  Some courts consider the four *Pioneer* factors whether a defendant's neglect was excusable: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay [default] and whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.[101] Fault in the delay [default] is "perhaps the most important single factor" in determining whether the defendant's neglect is excusable.[102]

### 3.  Application of Excusable Neglect Standard

#### a)  Defendant's fault, culpable conduct, and willfulness in defaulting

Defendant claims its conduct was not willful or without excuse because it had no knowledge of the adversary proceeding.  If the Court finds that defendant's actions were willful or without excuse, it may refuse to set aside default on that

---

based on excusable neglect cannot be used as technique to avoid consequences of conscious decision not to answer complaint); *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.,* 715 F.2d 1442, 1446-47 (10th Cir. 1983) (party that makes a conscious decision not to defend suit is not entitled to Rule 60(b)(1) relief).

[99] *Cessna Fin. Corp,* 715 F.2d at 1445 (quoting *Olson v. Stone (In re Stone)*, 588 F.2d 1316, 1319 (10th Cir. 1978)).

[100] *In re Lake,* 654 B.R. at 921-22; *see also Nolan v. Underwriters at Lloyd's, London,* 190 F.R.D. 578, 582 (D. Kan. 1999) (citing *Cashner v. Freedom Stores, Inc.,* 98 F.3d 572, 578 n.2 (10th Cir. 1996)).

[101] *See Pioneer Inv. Servs. Co.,* 507 U.S. at 395-96 (interpreting excusable neglect under Bankruptcy Rule 9006(b), and noting that under Rule 60(b) it is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence); *City of Chanute, Kan. v. Williams Natural Gas Co.,* 31 F.3d 1041, 1046 (10th Cir. 1994); *Mayfield v. Morris,* No. 17-0891, 2020 WL 3832962, at *3 (D.N.M. July 8, 2020).

[102] *United States v. Torres,* 372 F.3d 1159, 1163 (10th Cir. 2004).

27

basis alone.[103] Defense counsel asserted at the hearing that defendant first became aware of the adversary lawsuit when plaintiff began enforcement of the judgment. Yet, even assuming this to be true, the reason it lacked knowledge of the lawsuit was because it failed to staff its registered office and insure there were processes in place to handle official mail it received at the office when the registered agent was not present.[104]

Even if the defendant's conduct is deemed neglect as opposed to willful or culpable conduct, it is not excusable. The *Doran Law Office* case cited by plaintiff is instructive and strikingly similar to this case.[105]  In that case, plaintiff sought to serve defendant's resident agent Salah Ibrahim at its registered office in Linwood, Kansas by certified mail. Ibrahim was defendant's president and sole officer, and a real estate investor. Ibrahim designated himself as resident agent. When the postal service attempted delivery at the registered office addressed to an authorized recipient who was unavailable, the postal worker left a notice advising defendant how to arrange redelivery or pick up the mailing at the post office. The notice advised that if it was not claimed in 15 days, it would be returned to the sender. Fifteen days later, the certified mail was marked unclaimed and returned to plaintiff. Ibrahim claimed defendant did not conduct business at the Linwood address, the house was not typically occupied, and the mail was not checked

---

[103] *Drummond,* 2014 WL 2897849, at *3.
[104] Upon inquiry from the Court at the December 7, 2023 hearing on the motions to reopen and set aside the default judgment, defendant's counsel admitted that defendant *never* staffed its designated registered office and that it had no proffer of excusable neglect in failing to do so.
[105] *Doran Law Office,* 2015 WL 6871330.

28

regularly. Ibrahim also claimed he never received a copy of the complaint, the default judgment, or pleadings indicating the registration of a foreign judgment.

Though it involved a certified mailing that went unclaimed by the resident agent, the legal reasoning by the District Court regarding excusable neglect is equally applicable here, where an unidentified agent actually accepted service and delivery on behalf of defendant.[106]

> . . . courts determine what constitutes excusable neglect on a case-by-case basis based on the circumstances presented. . . . K.S.A. § 17-6202 requires every corporation to have and maintain in this state a resident agent, which agent may be an individual resident in this state. The resident agent "shall have a business office identical with the registered office which is generally open during normal business hours to accept service of process and otherwise perform the functions of a resident agent." **A logical extension of this rule is that a corporation that fails to maintain an appropriate registered office and that fails to take steps to ensure that it is notified of claims pending against it, is guilty of *inexcusable neglect.* . . .** [Defendant] continued to maintain the Fall Leaf Road address as its registered office, despite the residence "not typically being occupied," despite not utilizing the residence as a business office, and despite the sporadic visits to pick up mail. . . . **had [Defendant] established a means to ensure that it was promptly informed of business matters, it would not have suffered the prejudice of which it now complaints.** Accordingly, [Defendant's] own inexcusable neglect was responsible for its failure to appear in the action.[Emphasis added.][107]

The Tenth Circuit Court of Appeals affirmed the District Court's "inexcusable neglect" determination, agreeing that defendant's lack of notice was largely in the resident agent's control; Ibrahim continued to designate the same registered office

---

[106] KAN. STAT. ANN. § 17-6202, the former statute requiring every Kansas corporation to have and maintain a resident agent then in effect under the facts in *Doran Law Office* was repealed in 2014 and replaced by the substantially similar current version in § 17-7925 (2022 Supp.). *See* 2014 Kan. Sess. Laws, ch. 121, §§ 25, 46.
[107] *Doran Law Office,* 2015 WL 6871330, at *12.

29

knowing that no one lived or worked there on a regular basis and mail was not being checked regularly. As Ayiyi here, Ibrahim had exclusive control over what address defendant used as its registered office.[108]  The Tenth Circuit also found that the delay factor weighed in favor of plaintiff, where defendant waited nearly two months after learning of the lawsuit to move to set aside the judgment.[109] Here, defendant learned of the lawsuit and judgment *at the latest* in August or early September when plaintiff began enforcement of the judgment, but waited until November 7 to file its motion to set aside the default judgment.

As noted earlier in this opinion, the resident agent requirement for all Kansas entities (including limited liability companies) is now contained in § 17-7925(a), and leaves much of former § 17-6202 in place. It provides: "Every covered entity *shall have and maintain in this state* a resident agent, which agent may be either: . . . (2) an individual resident *in this state; . . .*"[110]  Subsection (b) further requires:

> Every resident agent for a covered entity shall: (1) If a domestic entity, maintain a business office identical with the registered office which is generally open, or *if an individual, be generally present at a designated location in this state at sufficiently frequent times to accept service of process and otherwise perform the functions of a resident agent*; . . . (3) accept service of process . . . and forward the same to the covered entity to which the service or communication is directed; and (4) forward to the covered entity for which it serves as a resident agent documents sent by the secretary of state.[111]

Defendant's conduct in not staffing its registered office at all is even more inexcusable in light of the fact that its registered agent, Ayiyi, was

---

[108] *Doran Law Office,* 678 Fed. Appx. at 736.
[109] *Id*. at 736-37.
[110] § 17-7925(a) (emphasis added.).
[111] § 17-7925(b) (emphasis added.).

30

expressly told by the auction company and plaintiff's counsel in separate emails before the adversary complaint was filed that a lawsuit was likely forthcoming if defendant did not perform under the contract.[112] Not only does defendant not dispute that Ayiyi received these email warnings and apparently still decided not to staff the registered office, but defense counsel's attempts to construe the emails as proof that plaintiff knew how to contact Ayiyi, and therefore had a duty to communicate with him "during the course of the proceedings…."[113] This argument ignores the fact that plaintiff followed the prescribed legal process in serving the lawsuit on defendant. Simply emailing a copy of it to Ayiyi would not have been legally sufficient, nor was plaintiff on notice during the default process of any claim that defendant had not received and accepted the service of the summons and complaint that was sent via certified mail.

The Court finds that if defendant lacked notice of plaintiff's adversary complaint, it was due to its own culpable conduct and inexcusable neglect by its noncompliance with § 17-7924 and § 17-7925. Defendant has not met its burden of proof to demonstrate excusable neglect and the Court therefore denies relief from the default judgment under Rule 60(b)(1).

### b) Prejudice to plaintiff if default judgment is set aside

Though the Court can deny relief from the default judgment on the sole basis of defendant's culpable conduct and inexcusable neglect, the Court also notes the

---

[112] *See supra,* p. 6.
[113] Doc. 44, p. 7.

31

prejudice to plaintiff of setting aside the default judgment. Plaintiff not only has a final judgment in this proceeding, the appeal time has run, it has registered its judgment in state court and obtained a judgment lien on real property purportedly owned by defendant—some fifteen properties. In the correspondence between plaintiff's and defendant's counsel during the September 2023 time frame, prior to filing the motion to set aside, the specter of a priority dispute may exist between plaintiff and potential mechanic's lien claimants with respect to the properties and insufficient value to cover all claims against the properties. Setting aside the default judgment may impair plaintiff's ability to enforce its judgment lien and alter the lien priorities, if the plaintiff must "start over."[114] The prejudice factor weighs against defendant.

### c) Lack of Meritorious Defense to Breach of Contract Claim

The existence of a meritorious defense is pivotal only if defendant has first persuaded the Court that its neglect in failing to respond to the adversary complaint was excusable.[115] Though defendant failed to satisfy its burden of proof on excusable neglect here, it has also failed to proffer a meritorious defense.

The Tenth Circuit Court of Appeals has addressed what defendant must present to the court to demonstrate a meritorious defense.

> The parties do not litigate the truth of the claimed defense in the motion hearing. See Assmann v. Fleming, 159 F.2d at 336. Rather, the court

---

[114] *Kiewel v. Balabanov,* No. 10-2113, 2011 WL 1770084, at *4 (D. Kan. May 9, 2011) (setting aside the default and default judgment may prejudice plaintiff where events have occurred that may impair plaintiff's ability to litigate or defend the case) (citing *Super Film of Am., Inc. v. UCB Films, Inc.,* No. 02-4146, 2004 WL 2413497, at *2 (D. Kan. Sept. 23, 2004)).

[115] *Doran Law Office,* 2015 WL 6871330, at *11 (citing *Marcus Food Co. v. DiPanfilo,* 671 F.3d 1159, 1172-73 (10th Cir. 2011)).

examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action. For purposes of this part of the motion, the movant's version of the facts and circumstances supporting his defense will be deemed to be true. See Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951). ***Thus the focus is on the sufficiency of the factual statement contained in the moving papers. Unlike the simple notice pleading required in original actions, the rule relating to relief from default judgments contemplates more than mere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense.*** Gomes v. Williams, 420 F.2d at 1366. See Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp., 383 F.2d 249, 251-52 (4th Cir. 1967); United States v. Topeka Livestock Auction, Inc., 392 F. Supp. 944, 951 (N.D. Ind. 1975). ***The rule requires a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were believed, would be meritorious.*** [Emphasis added].[116]

Defendant's initial motion for relief from default judgment and its supplemental filing both lack any specific factual support for a meritorious defense to the lawsuit. At the hearing, the only proffer of evidence on liability by defendant was a claim that Ayiyi's realtor advised him not to make the earnest money deposit because "the contract would go away," and defendant would have no responsibility under the contract. Defendant's counsel did not proffer anything else about that advice.[117] As noted in the facts section,[118] defendant has also alleged in a conclusory fashion that its defenses to liability under the contract include "the materiality of any alleged breach, the fact that there was a condition precedent to completing

---

[116] *Olson v. Stone (In re Stone)*, 588 F.2d 1316, 1319 (10th Cir. 1978); *see also Midwest Cmty. Bank*, 2010 WL 11565147, at *3 (conclusory allegations of meritorious defenses do not entitle defendants to relief from default judgment).

[117] Even if defendant relied on that advice, that reliance is not excusable neglect under the first prong. *See Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 578 n.2 (10th Cir. 1996) (reliance on advice of counsel in not defending lawsuit is a deliberate, conscious choice).

[118] *Supra,* at p. 11.

33

performance under the contract, and causation." This does not satisfy the Tenth Circuit's requirement for a sufficient elaboration of facts to permit the trial court to judge whether the defense would be meritorious.

Defendant's proffer on damages suffers the same defect. It claimed the measure of damages applied by the Court was legally and factually erroneous. It cited no legal authority regarding the appropriate measure of damages. The only proffer concerning the amount of damages was defense counsel's statement that the value of the property did not appraise for defendant's purchase price and it was unable to obtain financing to complete the purchase. However, it made no proffer that the purchase contract was contingent upon financing.[119]

In sum, defendant's claim that it has meritorious defenses to the contract action also fails.

### C.  The Motion to Reopen the Adversary Proceeding

Bankruptcy Code § 350(b) governs a motion to reopen a bankruptcy *case,* to administer assets, to accord relief to the debtor, or for other cause.[120]  Defendant moved to reopen the adversary case, but not the bankruptcy case.[121] Although motions to reopen adversary proceedings are sometimes filed when post-judgment relief under Rule 60(b) is sought, there is no need to formally reopen.

---

[119] The defendant's bid acknowledgment explicitly stated that "Buyer's obligation to close is not contingent upon Buyer's ability to obtain financing." *See* Doc. 1-1, p. 1.

[120] 11 U.S.C. § 350; *see also* FED. R. BANKR. P. 5010.

[121] *Lustig v. Blakesley (In re Blakesley),* Case No. 19-20566, Adv. No. 21-2001, 2021 WL 5985327, at *4 (Bankr. W.D.N.Y. Dec. 16, 2021) (plain language of § 350 pertains to reopening a bankruptcy case, not an adversary proceeding); *Woodcock v. U.S. Dept. of Educ. (In re Woodcock),* 315 B.R. 487, 497 (Bankr. W.D. Mo. 2004) (on remand from Bankruptcy Appellate Panel, bankruptcy court concluded that § 350(b) relates to the reopening of underlying bankruptcy case, not a request to vacate judgment entered in separate adversary proceeding).

34

In *In re Johnson,* the Tenth Circuit Court of Appeals noted that bankruptcy courts retain jurisdiction over adversary proceedings after dismissal or closing of the underlying bankruptcy case.[122] *Johnson* dealt with an adversary proceeding for willful violation of the automatic stay—a core proceeding over which the bankruptcy court retained jurisdiction. The Tenth Circuit noted that where the adversary proceeding was a non-core, related proceeding, the bankruptcy court has discretion whether to retain jurisdiction over the adversary proceeding.[123]

It is appropriate for the Court to consider defendant's substantive motion to set aside the default judgment in the adversary proceeding, but unnecessary for the Court to reopen the adversary proceeding to do so. Even if reopening was necessary, the Court's denial of defendant's motion to set aside the default judgment makes reopening moot.[124]

### III.   Conclusion

The defendant's motion for relief from the default judgment under Rule 60(b)(4) for insufficient service of process and lack of personal jurisdiction is

---

[122] *Johnson v. Smith(In re Johnson),* 575 F.3d 1079, 1083-84 (10th Cir. 2009) (though chapter 13 bankruptcy case was dismissed for debtors' failure to make plan payments, bankruptcy court retained jurisdiction over debtors' adversary proceeding for willful violation of the automatic stay and debtors were not required to move to reopen the case to pursue the adversary proceeding). *See also Menk v. Lapaglia (In re Menk),* 241 B.R. 896, 904 (stating that there is no explicit requirement that a case be opened for a court to act in a 'civil proceeding' under § 1334(b)).

[123] *See In re Johnson,* 575 F.3d at 1083-84 (citing cases); *In re Menk,* 241 B.R. at 907 (bankruptcy court has discretion to retain jurisdiction over matters with its "related to" jurisdiction after dismissal of bankruptcy case, subject to consideration of economy, convenience, fairness, and comity).

[124] *See In re Lake,* 654 B.R. at 922 (because the court could not grant relief from the default judgment of alleged fraudulent transfer under Rule 60, there was no cause to reopen the adversary proceeding); *see also Smith v. PAC Int'l Logistics Co. (In re Advanced Marketing Services, Inc.),* 448 B.R. 321, 329 (Bankr. D. Del. 2011) (motion to reopen adversary proceeding for cause to vacate default judgment for inadequate service of the adversary complaint); *Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1307 (2d Cir. 1996) (finding default judgment that could not be set aside was a permissible basis to deny the motion to reopen the adversary proceeding).

35

DENIED.  Relief from the default judgment under Rule 60(b)(1) for excusable

neglect is DENIED, as is the request to set aside the entry of default under Rule

55(c).  Because consideration of the pending motions does not require reopening the

adversary proceeding, the motion to reopen the adversary proceeding is also

DENIED.

### #